UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

OTIS D. WILLIAMS,

                           Plaintiff,

      v.                                            **DECISION AND ORDER**
                                                                 14-CV-202S

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,

                           Defendant.

1.     Plaintiff Otis D. Williams challenges an Administrative Law Judge's ("ALJ") decision, dated July 31, 2012, wherein the ALJ determined that Plaintiff was not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. He now contends that this determination is not based upon substantial evidence, and reversal is warranted.

2.     Plaintiff protectively filed applications for a period of disability and disability insurance benefits, as well as an application for supplemental security income, on January 19, 2011.[1] In both applications he alleged a disability beginning on February 10, 2010, the date Plaintiff suffered a stroke. These applications were initially denied on April 28, 2011, and Plaintiff was granted a hearing on that denial. He testified before the ALJ on April 25, 2012. The ALJ issued a decision denying Plaintiff's applications on July 31, 2012. The Appeals Council denied Plaintiff's request for review on February 3, 2014, rendering the ALJ's determination the final decision of the Commissioner. Plaintiff filed the instant action on March 24, 2014.

---

[1] Plaintiff previously filed an application for disability benefits on July 29, 2010, based on the same onset date and circumstances, which was denied. (R. 167-68.)

1

3. Plaintiff and the Commissioner each filed a Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988).

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (internal quotation marks and citation omitted). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982), *cert denied*, 459 U.S. 1212 (1983).

5. To determine whether the ALJ's findings are supported by substantial evidence, "a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other

words, this Court must afford the Commissioner's determination considerable deference, and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6.  The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7.  This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8.  While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this

inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460-61, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9. In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff had not engaged in substantial gainful activity since February 10, 2010, his asserted onset date (R. 15);[2] (2) Plaintiff had the following severe impairments: left upper extremity dysfunction, left lower extremity dysfunction, and diabetes mellitus (R. 15-16); (3) Plaintiff did not have an impairment or combination of impairments that met or medically equaled a recognized disabling impairment under the regulations (R. 16); (4) Plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined by the relevant regulations[3] except that he is able to sit for an eight-hour workday with normal breaks, stand and/or walk for a total of two hours in a eight hour workday, occasionally lift and/or carry ten pounds, and could never be exposed to unprotected heights (R. 16-19); and (5) although he could not perform any of his past relevant work, considering his age, education, experience, and RFC, there were sufficient jobs in the national economy that he could perform. (R. 19-20.)

10. Plaintiff contends that the ALJ erred in rejecting the opinion of Plaintiff's

---

[2] Citations to the underlying administrative record are designated as "R."

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

4

treating physician Dr. John Sauret that Plaintiff was totally permanently disabled from working. (Pl's Mem of Law at 19-22; R. 424-425.) A treating physician's opinion is generally given more weight than that of other reports, and in fact will be given controlling weight if it is "well-supported by medically acceptable [evidence] and is not inconsistent with the other substantial evidence in [the] record." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999); see 20 C.F.R. § 404.1527(c)(2). Here, however, the opinion was expressed in a preprinted form signed by Dr. Sauret on August 3, 2011, on which a single line is used to denote that Plaintiff is "Very Limited" in every single physical functioning category. (R. 425.) The ALJ correctly noted that no detail was offered in support of these assessments. (R. 19.) Thus, Dr. Sauret's conclusory assertion that Plaintiff was totally, permanently disabled is not a "medical opinion" entitled to any special significance, inasmuch as disability determinations are within the exclusive purview of the Commissioner. 20 C.F.R. § 404.1527(d)(1),(3).

Moreover, as the ALJ stated, Dr. Sauret's conclusion is undermined by his own treatment notes. (R. 19.) In contrast to the assertion of total disability on August 3, 2011, Dr. Sauret's July 8, 2011 treatment notes for Plaintiff indicate only a "mild left hemiparesis." (R. 486-87.) On August 12, 2011, nine days after Dr. Sauret signed the disability form, the treatment notes reflect Plaintiff "[f]ell off his bike a week ago and [he] twisted his left ankle. Although Plaintiff "still ha[d] some swelling," he was "[s]till able to walk but with some mild pain." (R. 484.) The remaining treatment notes from Dr. Sauret contain no remarkable notations regarding Plaintiff's physical capabilities; accordingly, the ALJ did not err in discounting this treating physician's conclusory opinion regarding disability.

11.     Plaintiff further argues that the ALJ failed to properly consider the combined effect of Plaintiff's exertional and non-exertional impairments. (Pl's Mem of Law at 16-19.)

5

Specifically, Plaintiff asserts that the ALJ failed to consider "his visual problems, headaches, pain, inability to ambulate without [an] assistive device, difficulty performing reaching, handling, climbing, crawling or crouching." (Id. at 18.) A review of the decision as a whole supports the conclusion that the ALJ did in fact consider the cumulative effect of Plaintiff's impairments, although he did not credit several of those listed by Plaintiff here. The ALJ cited the evidence that any deficiency in Plaintiff's vision was not disabling. (R. 17-18, 356, 470, 520.) He further found that Plaintiff's use of a cane was unrelated to his stroke, but was necessitated by the sprained ankle that resulted from Plaintiff's August 2011 bicycle accident. (R. 17, 484-85.) There is also little evidence in the record regarding Plaintiff's purported headaches, and what few references do appear indicate the absence of that symptom. (R. 271, 470, 488.)

12.	Similarly, the ALJ also expressly found that the medically determined impairments could reasonably cause Plaintiff's subjective complaints of pain and movement limitation, but not to the extent alleged. Plaintiff contends that the ALJ erred in making this credibility determination. Credibility determinations are generally reserved to the Commissioner, not the reviewing court. Selian v. Astrue, 708 F.3d 409, 420 (2d Cir. 2013); Aponte v. Sec'y, Dep't of Health and Human Servs., 728 F.2d 588, 591 (2d Cir. 1984). Where, as here, the ALJ identified the specific record-based reasons for his ruling, it is not the function of the reviewing court to second-guess the credibility evaluation. Stanton v. Astrue, 370 F. App'x 231, 234 (2d Cir. 2010) (citing SSR 96-7p, 61 Fed. Reg. 34,483 at 34,486 (1996)); Crofoot v. Commissioner of Social Sec., No. 1:12-cv-521(GLS/ESH), 2013 WL 5493550, *12 (N.D.N.Y. Sept. 30, 2013). In addition to the record references cited above, the ALJ also relied on the progress notes of both treating and consulting physicians, nurses, and therapists to support his conclusion that Plaintiff

overstated his physical limitations. These notes reflected that, although there was some sensory reduction on Plaintiff's left side, his muscle strength was generally intact and he walked with only a slight limp. (R. 17 -18 (citing R. 269, 271, 356-58, 381-83, 417); see also R. 371 (moves extremities without difficulty).

The ALJ also relied on Plaintiff's own testimony regarding his daily activities. (R. 18.) Plaintiff is correct to highlight that there is little exploration of how extensively he engaged in activities such as housekeeping or bike riding. Nonetheless, in light of the medical evidence cited by the ALJ, the decision to find these activities relevant and not to credit the full extent of Plaintiff's alleged limitations is supported by substantial evidence. Further, contrary to Plaintiff's assertion, the ALJ expressly recognized that Plaintiff's steady work record prior to his stroke generally raised a favorable inference regarding his motivation to work. (R. 18); see Rivera v. Schweiker, 717 F.2d 719, 725 (2d Cir. 1983) (a "claimant with a good work record is entitled to substantial credibility"). The ALJ further found, however, that "despite being released by a medical provider for sedentary work," Plaintiff had made no efforts to find a job. (R. 18; see R. 289.)

The fact that the ALJ subsequently misidentified one release as being signed by Dr. Nyathappa Anand does not undermine this conclusion. This form was signed in March 2010, shortly after Plaintiff's stroke, by Wendy Werner, the family nurse practitioner who examined Plaintiff for that purpose. (R. 271-72 (noting Plaintiff was pain free with a normal gait and station, but had a decreased range of motion), 289); see generally Genier v. Astrue, 298 F. App'x 105, 108 (2d Cir. 2008) (a nurse practitioner's opinion may be considered with respect to the severity of an impairment and ability to work). It is consistent with a similar release indicating Plaintiff could perform part time work that was signed by treating physician Kaveh Sadeghi, M.D., in May 2010. (R. 290, 329.) Dr.

7

Sadeghi indicated that any restriction would only be needed for 30 days. (R. 290, 329.) As highlighted by the ALJ, subsequent treatment notes indicated that Plaintiff was improving, even when his compliance with medication was questioned. (R. 18 (citing R. 486, 494); see also R. 386-400, 501-16 (physical therapy reports indicating that Plaintiff went from complaining of a stiffness in his left side in February 2011 to "feeling a lot stronger" and having "no complaints" during subsequent visits).)

13.   Further, substantial evidence supports the ALJ's determination that Plaintiff's non-exertional limitations had only a minimal effect, if any, on Plaintiff's ability to perform work functions.  There was therefore no error in the ALJ's decision to rely on the Commissioner's Medical-Vocational Guidelines instead of calling a vocational expert to determine if there was work in the national economy that Plaintiff could perform.  See Zabala v. Astrue, 595 F.3d 402, 410-11 (2d Cir. 2010).  Finally, Plaintiff's contention that the ALJ failed to rule on a request to reopen a prior application based on the same onset date is moot in light of the conclusion that substantial evidence supports the ALJ's determination that Plaintiff was not disabled within the meaning of the Social Security Act. (See Pl's Reply Mem at 2.)

14.   For the foregoing reasons, and after a review of the record as a whole, this Court concludes that the ALJ's determination is supported by substantial evidence. Defendant's Motion for Judgment on the Pleadings is granted.


IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 9) is DENIED;

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 12) is GRANTED;

FURTHER, that the Clerk of the Court is directed to take the necessary steps to close this case.

SO ORDERED.

Dated: March 30, 2015
       Buffalo, New York

    /s/William M. Skretny
    WILLIAM M. SKRETNY
    Senior United States District Judge